UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CARMEN M.,

          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

20-CV-06532-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Carmen M.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 13) is granted, defendant's motion (Dkt. No. 14) is denied, and the case is remanded for further administrative proceedings.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on October 12, 2017, alleging a disability onset date of December 31, 2015. (Administrative Transcript ["Tr."] 166-67). The application was initially denied on January 30, 2018. (Tr. 61-74). Plaintiff timely filed a request for an administrative hearing. (Tr. 81-114). On August 5, 2019, Administrative Law Judge ("ALJ") T. Kim held a video hearing from Falls Church, Virginia. (Tr. 37-60). Plaintiff appeared in Rochester, New York with her non-attorney representative. Plaintiff testified with the assistance of a Spanish interpreter. A vocational expert also testified. The ALJ issued an unfavorable decision on September 10, 2019. (Tr. 15-36). On July 2, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-8). This action followed.

## DISCUSSION

### I. Scope of Judicial Review

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 12, 2017, the application date. (Tr. 23). At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; anxiety; adjustment disorder; personality disorder; major depressive disorder; borderline personality disorder; panic disorder; degenerative disc disease in the lumbar spine; neuropathy; and degenerative disc disease of the cervical spine. (Tr. 23-24). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24-26). Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work with the following limitations:

> [T]he claimant can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities. The claimant can occasionally kneel, crouch, stoop, balance, and crawl, and can occasionally climb stairs and ramps. The claimant can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. The claimant can tolerate occasional exposure to vibration. In addition, the claimant is able to understand, carry-out, and remember simple instructions, and make simple work related decisions. The claimant can occasionally deal with supervisors and co-workers, and can never deal with the public

(Tr. 26-31). At step four, the ALJ found Plaintiff capable of performing past relevant work. (Tr. 31-32). At step five, the ALJ found, in the alternative, Plaintiff capable of performing jobs that exist in significant numbers in the national economy. (Tr. 20). Accordingly, the ALJ determined that Plaintiff has not been under a disability from since October 12, 2017, the application date. (Tr. 33).

IV.   *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the ALJ erred by failing to evaluate properly all the medical opinions in accordance with applicable legal standards. The Court agrees.

"The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, *4-5 (N.D.N.Y. June 10, 2020) (*quoting Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017) (*citing* 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "Instead, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Id.* (*quoting* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)). "This is consistent with an ALJ's longstanding duty to fully explain exactly how a particular medical opinion or opinions are inconsistent with the medical evidence." *Pamela P. v. Saul*, 2020 WL 2561106, at *5

(N.D.N.Y. May 20, 2020) (citing *Wright v. Comm'r of Soc. Sec.*, 2020 WL 1323013, at *2 (E.D.N.Y. Mar. 20, 2020)).

"An ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion." *Brian O.*, 2020 WL 3077009, *4-5 (*quoting* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). "With respect to 'supportability,' the new regulations provide that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.'" *Id.* (*quoting* §§ 404.1520c(c)(1), 416.920c(c)(1)). "The regulations provide that with respect to 'consistency,' '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.'" *Id.* (*quoting* §§ 404.1520c(c)(2), 416.920c(c)(2)). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin.*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (*quoting Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776, at *9 (N.D.N.Y. Oct. 1, 2020)).

Here, the ALJ indicated that he "considered the Physical Assessments for Determination of Employability and the Medical Source Opinion of treating providers presented in the record." (Tr. 31 (citing T 377-421, 630-33)). The ALJ did not identify the

content or the source of any of the opinions, but instead found "these assessments and opinions to be less persuasive and not consistent with the medical evidence in this case." (Tr. 31). He concluded that "[a]fter considering the objective medical evidence, subjective statements made by the claimant and by third parties, and all opinions, the undersigned finds that the claimant's [RFC] as defined above accurately details the claimant's functional limitations." (Tr 31). This analysis falls short of the new legal standard.

The Courts applying the new regulations have continued to hold that, "'[e]ven though ALJs are no longer directed to afford controlling weight to treating source opinions - no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Raymond M. v. Comm'r of Soc. Sec.*, 2021 WL 706645, at *9 (N.D.N.Y. Feb. 22, 2021) (*quoting Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020); *citing Jacqueline L. v. Comm'r of Soc. Sec.*, 2021 WL 243099, at *4 (W.D.N.Y. January 26, 2021). "At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M.*, 2021 WL 706645, at *8 (*quoting Jacqueline L.*, 2021 WL 243099, at *6). "The 'supportability' factor asks how well a medical source supported their opinion(s) with 'objective medical evidence' and 'supporting explanations.'" *Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021) (*quoting* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).

Here, this analysis was not done. The opinions collectively rejected by the ALJ consisted of six separate treating medical opinions from the relevant time frame: (1) employability assessment of Chelsea Keller, MS, MFT dated August 8, 2017 (Tr. 410-13); (2) employability assessment of Ms. Keller dated October 31, 2017 (Tr. 391-93, 406-09); (3) employability assessment of Ms. Keller dated February 20, 2018 (Tr. 396-99); (4) employability assessment of Meghan O'Connor, LMHC, NCC dated December 7, 2018 (Tr. 385-88); (5) employability assessment of R. Joseph Chapman, PA dated January 8, 2019 (Tr. 378-84); and (6) medical source statement of Ms. O'Connor dated May 6, 2019 (Tr. 631-33). Each opinion contained limitations more restrictive than the ALJ's RFC finding, and each of the longitudinal opinions provided by Ms. Keller and Ms. O'Connor contained nonexertional limitations inconsistent with all work. It is unclear how the ALJ considered the supportability and consistency of each of the five opinions when the ALJ did not discuss the content of any of the opinions and did not expressly address "supportability" and "consistency."

The ALJ failed to discuss the treating relationship of Mr. Chapman, Ms. Keller, or Ms. O'Connor, and the ALJ failed to discuss the evidence relied upon by Mr. Chapman, Ms. Keller, or Ms. O'Connor to support each opinion. Remand is required when the ALJ failed to examine what evidence the opining sources "'used to support their opinions and reach their ultimate conclusions.'" *Brianne S. v. Comm'r of Soc. Sec.*, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (*quoting Cuevas*, 2021 WL 363682, at *14). When Mr. Chapman provided his opinion on January 8, 2019, he had previously treated Plaintiff on April 2, July 10, and December 4, 2018 and January 8, 2019 for neuropathy in her hands and feet, right pinky finger pain, headache, and chronic upper back pain. (Tr. 538-47). In

addition to the clinical finings within his own treatment notes, he reviewed x-rays of the right hand revealing mild joint space narrowing of the interphalangeal joints, most significant at the fifth digit. (Tr. 687). He reviewed x-rays of the cervical spine revealing mild degenerative disc disease at C6-C7 with only minimal disc space narrowing. (Tr. 727-29). The ALJ did not discuss the examination and treating relationship, nor the evidence considered by Mr. Chapman when formulating his opinion on January 8, 2019. The ALJ's analysis does not consider the supportability of Mr. Chapman's opinion.

When Ms. Keller provided her opinion on August 8, 2017, she had evaluated Plaintiff 21 times and noted a treatment relationship since September 2, 2015. (Tr. 410). She provided her most recent mental status examination significant for anxious mood and passive suicidal ideation. (Tr. 411). In her opinion dated October 31, 2017, she noted 37 evaluations of Plaintiff. (Tr. 391). Her mental status examination was abnormal for anxious mood. (Tr. 407). Her opinion from February 20, 2018 contained a mental status examination significant anxiety and tearfulness. (Tr. 397). The treatment notes show that Ms. Keller provided cognitive behavioral therapy on September 19, October 10 and 31, November 6 and 28, and December 12, 2017, as well as on January 9, February 20, and April 3 and 24, 2018. (Tr. 315-34, 448-64, 472-83). Plaintiff's appointment on September 19, 2017 was noted to be her 21st appointment with Ms. Keller, and her appointment on April 24, 2018 was Ms. Keller's 33rd therapy appointment. (Tr. 317, 482). Mental status examinations showed: ambivalent mood (Tr. 450, 458); sad and/or low mood (Tr. 317, 321, 322, 461 462, 474); anxious mood or significant anxiety (Tr. 317, 454, 461, 462, 474, 478, 482); tearful affect or tearfulness (Tr. 317, 461, 462); ruminative thought content (Tr. 462); thoughts of guilt (Tr. 474); fair concentration/attention (Tr. 322, 450, 458, 462, 475);

fair insight (Tr. 318, 323, 328, 333, 450, 458, 463, 475, 479, 483); and fair judgment (Tr. 318, 323, 328, 333, 450, 454, 458, 463, 475, 479, 483). The ALJ did not compare any of the objective psychiatric findings to Ms. Keller's three, separate, longitudinal opinions, and the ALJ did not consider the supportability of her opinions.

Ms. O'Connor administered treatment after Ms. Keller on May 7, 2018 and thereafter provided a medical opinion on December 7, 2018. (Tr. 385-88). A mental status examination was noted for depressed mood and affect, and fair insight and judgment. (Tr. 386). On May 6, 2019, Ms. Keller provided another opinion identifying signs and symptoms of depressed mood; sleep disturbance; decreased energy; feelings of guilt or worthlessness; and difficulty concentrating or thinking. (Tr. 631). Ms. O'Connor ultimately assessed that Plaintiff would likely be absent from work about 3 days per month on average as a result of her impairments or treatment. (Tr. 633). Since May 7, 2018 when treatment was transferred to Ms. O'Connor, Plaintiff received cognitive behavioral treatment on May 7, 24, and 25, June 10, 12, and 22, July 9, 20, and 23, September 7, 18, and 20, October 4, 11, and 24, November 16, and December 5, 7, and 26, 2018, and January 23, February 6 and 20, March 6 and 27, April 10 and 25, May 1, 2019. (Tr. 484-509, 515-33, 555-629). She was also receiving CBT Spanish group weekly as of June 12, 2018. (Tr. 504, 519, 527, 563, 567, 576, 580, 589, 598, 602, 607, 616, 624, 629). Mental status examinations included: anxious mood (Tr. 486, 490, 507, 518, 562, 566, 575, 580, 597, 602, 606, 610, 615, 619, 628); ambivalent mood (Tr. 571); sad mood (Tr. 499, 571, 584); depressed mood (Tr. 502, 503, 527, 580, 584, 588, 589, 623, 628); constricted affect (Tr. 584); flat affect (Tr. 584); tearful affect (Tr. 499, 507, 584); ruminative thought content (Tr. 523, 584); preoccupation (Tr. 527); helplessness (Tr. 584); fair insight (Tr.

518, 527, 532, 598, 602, 606, 611, 615, 619, 624, 628); and fair judgment (Tr. 487, 491, 527, 532, 576, 580, 585, 589, 598, 602, 606, 611, 615). Thus, the ALJ did not compare any of the objective psychiatric findings to Ms. O'Connor's two opinions, and the ALJ did not consider the supportability of her opinions.

The ALJ failed to consider the consistency of the opinions of Ms. Keller and Ms. O'Connor. The four unemployability assessments completed by Ms. Keller or Ms. O'Connor on August 8, 2017, October 31, 2017, February 20, 2018, and December 7, 2018 each indicated that Plaintiff was unable to function 10-25% of the time in the following: (1) perform simple and complex tasks independently; (2) maintain attention and concentration for rote tasks; (3) regularly attend to a routine and maintain a schedule; and (4) perform low stress and simple tasks. (Tr. 387, 392, 398, 412). Each opinion indicated the inability to use public transportation. (Tr. 387, 392, 398, 412). Although provided in a different format, Ms. O'Connor's opinion from May 6, 2019 indicating that Plaintiff would likely be absent from work about 3 days per month on average as a result of her impairments or treatment is consistent with the inability to regularly attend to a routine and maintain a schedule 10-25% of the time. (Tr. 633). Thus, five opinions were consistent, and the ALJ failed to provide an analysis of the consistency of the opinions. See Brianne S., 2021 WL 856909, at *5.

The ALJ's minimal analysis does not identify evidence inconsistent with or unsupportive of the opinions of Plaintiff's treating sources. The ALJ vaguely found that the opinions were "not consistent with the medical evidence in this case." (Tr. 31). "Where an ALJ 'merely states' that an examining physician's opinion is 'not consistent with[ ] the overall medical evidence,' he has failed to adequately explain his conclusions regarding

the consistency factor." *Brianne S.*, 2021 WL 856909, at *5 (*quoting Raymond M.*, 2021 WL 706645, at *10 (alterations in original)). The ALJ's failure to identify specific evidence as inconsistent with specific portions of the five separate opinions "clearly leaves pertinent questions unanswered." *Raymond M.*, 2021 WL 706645, at *9 (*citing Danette Z. v. Comm'r of Soc. Sec.*, 2020 WL 6700310, at *8 (N.D.N.Y. Nov. 13, 2020)). Courts have found such vague and conclusory reasoning insufficient. *See Lee G. v. Comm'r of Soc. Sec.*, 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir.2008); *McCarthy v. Colvin*, 66 F. Supp. 3d 315, 322 (W.D.N.Y. 2014); *Gibbs v. Colvin*, 2015 WL 9217081, at *4 (W.D.N.Y. Dec. 17, 2015).

The ALJ thereafter found, "These forms provide no evidence to support their restrictions, consist of generally circled form limitations or short answer descriptions of those limitations, and are generally temporary for their designation of limitations." (Tr. 31). However, as indicated above, each opinion provided by Ms. O'Connor or Ms. Kelly was accompanied by a mental status examination or identified signs and symptoms. The checkbox format of the opinions did not render the opinions unsupported or unexplained, and this reason is not sufficient to override the six separate opinions. See *Allen v. Comm'r of Soc. Sec.*, 2019 WL 4894102, at *3 (W.D.N.Y. Oct. 4, 2019) (*citing Merritt v. Comm'r of Soc. Sec.*, 2016 WL 6246436, *8 (W.D.N.Y. 2016); *Goble v. Colvin*, No. 15-CV-6302 CJS, 2016 WL 3179901, at *5 (W.D.N.Y. June 8, 2016); *Kain v. Colvin*, No. 15-CV-6645-FPG, 2017 WL 279560, at *4 (W.D.N.Y. Jan. 23, 2017); *Lewis v. Colvin*, No. 16-CV-6411L, 2018 WL 1044562, at *3 (W.D.N.Y. Feb. 26, 2018).

Also, as indicated above, the treatment notes of Ms. O'Connor and Ms. Kelly contained consistent mental status examination findings aligned with the findings within

in each opinion. Mr. Chapman also provided examination findings within his opinion and treatment notes and relied upon two x-rays when formulating his opinion. The opinions were not rendered in a vacuum, and the ALJ was required to evaluate the opinions together with the findings within the treatment notes. See Dorsheimer v. Saul, 2019 WL 2559517, at *5 (W.D.N.Y. June 21, 2019) (citing Medina v. Commissioner of Social Security, 2019 WL 1230081 (W.D.N.Y. 2019)). This is required under the supportability factor of the new regulations. The ALJ's discussion of the evidence elsewhere in the decision does not address the positive psychiatric findings consistently noted within the treatment notes. See (Tr. 29, 30). Although the ALJ did cite to some allegedly normal findings, "[s]ome normal mental exams, or some general statements of improvement, still fail to constitute substantial evidence supporting a determination of a denial of disability where other evidence in the record was ignored." Dany Z. v. Saul, 2021 WL 1232641, at *12 (D. Vt. Mar. 31, 2021) (citing Jacobs v. Saul, 482 F. Supp. 3d 23, 28 (E.D.N.Y. 2020); Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014)). Thus, the ALJ failed to weigh the six opinions pursuant to the appropriate legal standards.

The ALJ's rejection of these treating opinions because of temporal limitations contained therein was also error. Courts have consistently held that it is improper for an ALJ to discount opinions based upon the expected duration language contained in the opinions. See Lefort v. Comm'r of Soc. Sec., 2019 WL 2994406, at *4 (W.D.N.Y. July 8, 2019); Garcia Medina v. Comm'r of Soc. Sec., 2019 WL 1230081, at *4-5 (W.D.N.Y. Mar. 15, 2019); Fountain v. Berryhill, 2018 WL 4658203, at *3 (W.D.N.Y. Sept. 27, 2018); Jones v. Colvin, 2017 WL 1321015 at *20 n.29 (E.D.N.Y. 2017); Mura v. Colvin, 2017 WL 2543939, at *5 (W.D.N.Y. June 13, 2017).

The ALJ's errors in evaluating the opinions are not harmless. Each of the opinions of Ms. Keller and Ms. O'Connor contain limitations supporting that Plaintiff would either be off task more than 10% of the workday or absent from work more than 1-2 days per month. The vocational expert testified that either limitation would prevent an individual from sustaining competitive employment. (Tr. 56). The four employability assessments dated between August 8, 2017 and December 7, 2018 indicated that Plaintiff would be unable to function 10-25% of the time in the following: (1) perform simple and complex tasks independently; (2) maintain attention and concentration for rote tasks; (3) regularly attend to a routine and maintain a schedule; and (4) perform low stress and simple tasks. (Tr. 387, 392, 398, 412). Ms. O'Connor's opinion from May 6, 2019 expressly indicated that Plaintiff would likely be absent from work about 3 days per month on average as a result of her impairments or treatment. (Tr. 633). As indicated above, Plaintiff received individual, group, and family mental health treatment more frequently than 3 days per month, and the record corroborates the limitations surpassing the thresholds that would preclude all employment. Thus, each of the five opinions of Ms. Keller and Ms. O'Connor contain limitations that would eliminate all work, including Plaintiff's past work, and would lead to a finding of disability at Step 5.

Concerning Mr. Chapman's opinion, Plaintiff was limited to the following in an 8-hour workday: (1) pushing, pulling, bending 1-2 hours; and (2) ability to lift/carry 1-2 hours. (Tr. 381). If Plaintiff was limited to lifting only 1-2 hours out of an 8-hour workday, Plaintiff would not be able to perform the "frequent lifting or carry weighing up to 10 pounds" required for most light work. 20 C.F.R. § 416.967(b). If Plaintiff was limited to sedentary work, Medical-Vocational Rule 201.17 would direct a finding of disability when Plaintiff

turned 45 years old given that the ALJ found Plaintiff illiterate or unable to communicate in English and having unskilled past relevant work. (Tr. 32); see 20 C.F.R. 404, Subpart P, Appendix 2, Medical-Vocational Rule (Grid Rule) 201.17. Thus, the ALJ would have been directed to find Plaintiff disabled as of July 24, 2018 if Plaintiff was limited to sedentary work. Thus, the ALJ's errors are not harmless.

In sum, for the reasons stated, the Court finds that the ALJ erred by failing to evaluate all the medical opinion evidence in accordance with the new Social Security regulations, and that such error was not harmless.[3] The case is therefore remanded.[4]

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 14) is denied, and the case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   November 17, 2021
         Buffalo, New York

_Michael J. Roemer_
MICHAEL J. ROEMER
United States Magistrate Judge

---

[3] The Plaintiff also argues that the ALJ erred by improperly evaluating the medical opinion evidence of consultative examiners and by relying on his own lay opinion in determining Plaintiff's manipulative limitations. The Commissioner should also consider these arguments on remand.

[4] The Court rejects Plaintiff's argument that such remand should be for the calculation of benefits only. It is not clear to the Court that a more complete record would not support the Commissioner's decision.